McCulloch | Kleinman Law
Kevin P. McCulloch
Nate A. Kleinman
501 Fifth Avenue, Suite 1809
New York, New York 10017
T: (212) 355-6050
F: (206) 219-6358
kevin@mkiplaw.com
nate@mkiplaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLEN KEE, | Civil Case No. |
| *Plaintiff*, | |
| v. | |
| THE DETROIT LIONS, INC.; GETTY IMAGES (US), INC.; NFL PROPERTIES, LLC; NFL ENTERPRISES, LLC; FANATICS RETAIL GROUP NORTH, LLC; DICK'S SPORTING GOODS, INC.; BULLION INTERNATIONAL, INC. d/b/a THE HIGHLAND MINT; TIMELESS CREATIONS, INC.; MCFARLANE TOYS, INC.; KEVIN GORDON d/b/a VC COLLECTIBLES; and JOHN DOES 1-10 | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| *Defendants*. | |

Plaintiff Allen Kee ("PLAINTIFF"), by and through undersigned counsel, hereby demands a trial by jury of all claims and issues so triable, and, as for his Complaint for copyright infringement and related claims against Defendants The Detroit Lions, Inc. ("DETROIT LIONS"); NFL Properties, LLC ("NFL PROPERTIES"); NFL Enterprises, LLC ("NFL ENTERPRISES");

Getty Images (US), Inc. ("GETTY IMAGES"); Fanatics Retail Group North, LLC ("FANACTICS"); Dick's Sporting Goods, Inc. ("DSG"); Bullion International, Inc. d/b/a The Highland Mint ("HIGHLAND MINT"); Timeless Creations, Inc. ("TCI"); McFarlane Toys, Inc. ("MCFARLANE"); Kevin Gordon d/b/a VC Collectibles ("VC COLLECTIBLES"); and John Does 1-10 ("JOHN DOES") (collectively "DEFENDANTS") hereby asserts and alleges as follows:

## PARTIES

1.      PLAINTIFF is a professional sports photographer who earns a living in part by selling and licensing his original photographs and earning royalties from customers who purchase licenses to publish and otherwise use PLAINTIFF'S photographic works.

2.      PLAINTIFF currently is a resident of both Florida and Connecticut.

3.      Upon information and belief, DETROIT LIONS is a Michigan for-profit corporation with its principal office located at 222 Republic Drive, Allen Park, Michigan, 48101.

4.      Upon information and belief, DETROIT LIONS is the corporate entity that owns/operates the Detroit Lions professional football team – one of thirty-two organizations or "clubs" that comprise the National Football League ("NFL") – and all Lions-related trademarks.

5.      Upon information and belief, NFL PROPERTIES and NFL ENTERPRISES are corporate entities created, organized, and operated by the NFL on behalf of its member clubs, including DETROIT LIONS.

6.       Upon information and belief, NFL PROPERTIES is a Delaware corporation registered to do business in New York, with a registered agent located at CT Corporation System, 28 Liberty Street, New York, NY 10005.

7.      Upon information and belief, NFL PROPERTIES is the corporate entity that owns and manages all trademarks and other intellectual property assets of the NFL and the NFL's member clubs, including DETROIT LIONS, which have each licensed the management of their intellectual property assets to NFL PROPERTIES.

8.      Upon information and belief, NFL ENTERPRISES is a Delaware corporation registered to do business in New York, with a registered agent located at CT Corporation System, 28 Liberty Street, New York, NY 10005.

9.      Upon information and belief, NFL PROPERTIES and/or NFL ENTERPRISES own and operate NFL Shop, which is an online retail website located at https://www.nflshop.com/.

10.     Upon information and belief, the NFL – acting through various subsidiaries and related corporate entities, including NFL PROPERTIES and NFL ENTERPRISES, and on behalf of the NFL's member clubs, including the DETROIT LIONS – organizes professional football games and events throughout the country for entertainment purposes, including games involving the DETROIT LIONS that have and will occur in New York State and this District.

11.     Upon information and belief, the NFL acts through its various subsidiaries and related corporate entities, including NFL PROPERTIES and NFL ENTERPRISES, and on behalf of its member clubs, including the DETROIT LIONS, to sell and/or license the rights to broadcast, stream, air, and otherwise publish and distribute the NFL's entertainment events and products to numerous media partners, including media and distribution partners located and doing business in this District.

12.     Upon information and belief, GETTY IMAGES is a corporation registered in New York, with a registered agent located at CT Corporation System, 28 Liberty Street, New York, NY 10005.

13.     Upon information and belief, TCI is an Illinois corporation with its registered address at 1485 Eastwood Avenue, Highland Park, IL 60035.

14.     Upon information and belief, TCI also does business as the "Fine Art Studio of Rotblatt Amrany," through which it operates a fine arts studio and receives commissions to create sculptures and other public artwork located around the country.

15.     Upon information and belief, FANATICS is a Delaware corporation and the licensing partner of NFL PROPERTIES for retail apparel, memorabilia, and merchandising purposes.

16.     Upon information and belief, FANATICS owns and operates the website located at www.fanatics.com.

17.     Upon information and belief, FANATICS also has partnered with NFL PROPERTIES and NFL ENTERPRISES to operate the NFL Shop website.

18.     Upon information and belief, DSG is a Pennsylvania corporation registered to do business in New York with a registered agent located 80 State Street, Albany, New York 12207.

19.     Upon information and belief, HIGHLAND MINT is a Florida corporation with its registered address at 4100 North Riverside Drive, Melbourne, FL 32937.

20.     Upon information and belief, HIGHLAND MINT is the official partner of the NFL in creating "minted" memorabilia products, sold and distributed around the country, including the official "flip-coin" tossed at the beginning of every NFL game.

21.     Upon information and belief, HIGHLAND MINT has entered into contracts and/or otherwise does substantial and ongoing business with corporate entities located in this District, including several of the other Defendants as alleged herein.

22.     Upon information and belief, TCI has entered into contracts and/or otherwise does substantial and ongoing business with corporate entities located in this District, including several of the other Defendants as alleged herein.

23.     Upon information and belief, MCFARLANE is a Michigan corporation with its headquarters located in Arizona, at 1711 W. Greentree Drive, Suite 212, Tempe, AZ 85284.

24.     Upon information and belief, MCFARLANE owns and operates a toy manufacturing and licensing business, through which it partners with other entities, including the NFL, to create and sell "officially licensed" toy figurines and collectible items.

25.     Upon information and belief, VC COLLECTIBLES is owned and operated by residents of Arizona who display and sell memorabilia products on/through eBay.

26.     Together, FANATICS, DSG, HIGHLAND MINT, MCFARLANE, and VC COLLECTIBLES are referred to herein as the "RETAIL DEFENDANTS."

27.     Upon information and belief, JOHN DOES are currently unidentified individuals and entities that also were involved in the infringing conduct alleged herein.

**JURISDICTION AND VENUE**

28.     This is an action for copyright infringement and related claims brought by PLAINTIFF, the registered owner of the copyrights in and to the photographic work at issue, against DEFENDANTS for unauthorized and infringing use of PLAINTIFF'S copyrighted work.

29.     Jurisdiction for PLAINITFF'S copyright claims lies with the United States District Court for the Southern District of New York pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, and 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

30.     Venue is proper in this Court under 28 U.S.C. §§ 1391(a) and (b) because, upon information and belief, each DEFENDANT maintains offices in, resides in, and/or conducts substantial and consistent business within this District and because PLAINTIFF'S copyrights have been violated in this District as alleged herein.

31.     Upon information and belief, the NFL – acting through various subsidiaries and related corporate entities, including NFL PROPERTIES and NFL ENTERPRISES, and on behalf of the NFL's member clubs, including the DETROIT LIONS – directly promotes and advertises its entertainment product nationwide, including in this District, via all manner of media platforms and distribution channels.

32.     Upon information and belief, DETROIT LIONS has undertaken numerous contractual relationships with and through NFL PROPERTIES and/or the NFL's various subsidiaries and related corporate entities.

33.     Upon information and belief, the DETROIT LIONS, acting through its owners, employees, or other agents, regularly transacts business in this District, including both separately on its own and through and with NFL PROPERTIES and the NFL's other various subsidiaries and related corporate entities.

34.     Upon information and belief, DETROIT LIONS' owners, employees, and/or other agents regularly attend business meetings and otherwise conduct business in this District, including but not limited to regarding its business dealings and relationships with and through the NFL and the NFL's various subsidiaries and related corporate entities.

35.     Upon information and belief, GETTY IMAGES maintains offices and employees in this District and conducts constant business in this District, including distributing content to this District on a regular and consistent basis.

36.     Upon information and belief, FANATICS does substantial business in this District, maintains offices and employees in this District, and has substantial and ongoing business dealings with numerous business partners that also maintain offices and employees in this District.

37.     Upon information and belief, TCI conducts substantial business in this District, including business dealings with certain of the other DEFENDANTS who are located in this District as alleged herein.

38.     Upon information and belief, DSG owns/operates a chain of sporting goods stores located across the United States, including in New York state.

39.     Upon information and belief, each of the RETAIL DEFENDANTS advertise, sell, and distribute sports memorabilia products in the state of New York and in this District.

40.     Upon information and belief, VC COLLECTIBLES has sold the infringing products identified herein to persons or business located in this District.

41.     Upon information and belief, MCFARLANE has entered into contracts and/or otherwise does substantial and ongoing business with corporate entities located in this District, including several of the other Defendants as alleged herein.

42.     Upon information and belief, the infringing works and products identified herein that were created and have been displayed and sold by DEFENDANTS HIGHLAND MINT, TCI, MCFARLANE, FANATICS, AND DSG feature trademarks and other intellectual property owned by NFL and DETROIT LIONS, which intellectual property is managed by NFL PROPERTIES.

43.     Upon information and belief, the infringing works and products identified herein that were created and have been displayed and sold by DEFENDANTS HIGHLAND MINT, TCI, MCFARLANE, FANATICS, AND DSG were authorized and/or approved by NFL

PROPERTIES, which is located in this District, and thus PLAINTIFF'S claims relate to violations of his rights that occurred in this District.

## FACTUAL ALLEGATIONS

### *Plaintiff's Photograph*

44.     PLAINTIFF has been a professional sports photographer for over three decades.

45.     At all times relevant to the allegations and claims herein, PLAINTIFF worked primarily as a freelance photographer rather than an employee of any business or licensing agency, and thus PLAINTIFF retained all copyrights in and to the photographs that he created and he earned royalties by selling or licensing his works to third parties.

46.     On or about September 3, 1995, during a professional football game involving the DETROIT LIONS, PLAINTIFF created an iconic photograph of Barry Sanders (hereafter the "PHOTOGRAPH"), who at the time was a professional athlete playing football under contract with the DETROIT LIONS.

47.     Attached hereto as EXHIBIT 1 is a true and correct copy of PLAINTIFF'S PHOTOGRAPH.

48.     PLAINTIFF was not an employee of any entity or organization at the time he created the PHOTOGRAPH, and he did not create the PHOTOGRAPH under any "work for hire" arrangement or contract.

49.     PLAINTIFF is the sole author of the PHOTOGRAPH and is the exclusive owner of all copyrights in and to the PHOTOGRAPH.

50.     PLAINTIFF has never granted an exclusive license regarding the PHOTOGRAPH to any person or entity.

51.     PLAINTIFF has registered his copyrights in and to the PHOTOGRAPH with the United States Copyright Office under VA 2-373-133.

52.     Upon information and belief, in September 1995, PLAINTIFF submitted his PHOTOGRAPH for sublicensing to customers, along with other photographs that he created during the same game, to NFL Photos, which was a licensing agency created, owned, and operated by the NFL that was devoted to licensing and distributing photographs created at NFL events and games by freelance photographers, including PLAINTIFF.

53.     In submitting his PHOTOGRAPH to NFL Photos for sublicensing, PLAINTIFF did not relinquish any of his copyrights to the PHOTOGRAPH and he did not grant the NFL or any of its subsidiary corporate entities or member clubs any license or rights to use the PHOTOGRAPH without purchasing an additional usage license.

54.     Upon information and belief, NFL Photos ceased operations in or about 2004, at which time the NFL agreed to return any original slides submitted for licensing by freelance photographers, including PLAINTIFF.

55.     The original slide of PLAINTIFF'S PHOTOGRAPH was not returned to him by the NFL at the time that NFL Photos ceased operations or at any time thereafter.

56.     Upon information and belief, the NFL moved any original slides submitted by freelance photographers that were not returned to their creators/owners to an Iron Mountain storage facility located in California that, at the time, was owned and maintained by the NFL.

57.     Upon information and belief, the original slide of PLAINTIFF'S PHOTOGRAPH was among the slides that the NFL moved to its Iron Mountain storage facility when NFL Photos ceased operations.

***Getty Images***

58.     Between 2004 and 2007, PLAINTIFF licensed photographic works that he created during this time to WireImage, a licensing agency that was owned at the time by MediaVast, Inc. ("MediaVast").

59.     PLAINTIFF also submitted certain, select photographic works that he had created prior to 2004 to WireImage for sublicensing.

60.     PLAINTIFF did not submit or license his PHOTOGRAPH to WireImage at any time and his PHOTOGRAPH was never available for licensing through WireImage or part of the WireImage collection/library.

61.     Upon information and belief, GETTY IMAGES acquired MediaVast, and its subsidiary WireImage, in 2007 for a purchase price reported at the time to be over $200 million dollars.

62.     PLAINTIFF'S PHOTOGRAPH was not part of the WireImage collection/library that was acquired by GETTY IMAGES.

63.     Following GETTY IMAGES' acquisition of MediaVast, PLAINTIFF entered into a contributing photographer agreement with GETTY IMAGES.

64.     Content that was subject to PLAINTIFF'S contributor agreement with GETTY IMAGES was limited to the photographic works that PLAINITFF created during his time submitting content to WireImage and which he may subsequently submit for relicensing.

65.     Other than his content that was part of the WireImage collection, PLAINTIFF did not upload or submit any new content to GETTY IMAGES.

66.     PLAINTIFF never submitted his PHOTOGRAPH to GETTY IMAGES for relicensing.

67.     PLAINTIFF did not ever authorize any other person or entity to submit his PHOTOGRAPH to GETTY IMAGES for relicensing.

68.     Upon information and belief, at some point GETTY IMAGES created or acquired a copy of PLAINTIFF'S PHOTOGRAPH without PLAINTIFF'S knowledge, consent, permission, or authorization and without a license from PLAINTIFF.

69.     Upon information and belief, GETTY IMAGES has sold licenses to and distributed copies of PLAINTIFF'S PHOTOGRAPH to numerous customers without PLAINTIFF'S knowledge, consent, permission, or authorization.

70.     Prior to 2022, PLAINTIFF was entirely unaware that GETTY IMAGES had created or acquired a copy of PLAINTIFF'S PHOTOGRAPH without his consent, permission, or authorization and the PHOTOGRAPH was never subject to any aspect of the license stated in PLAINTIFF'S contributor agreement with GETTY IMAGES.

71.     Prior to 2022, PLAINTIFF was entirely unaware that GETTY IMAGES had sold licenses to PLAINTIFF'S PHOTOGRAPH to its customers without PLAINTIFF'S consent, permission, or authorization and without a license from PLAINTIFF.

72.     PLAINTIFF never authorized, permitted, or granted a license to GETTY IMAGES to access, copy, scan, publish, license, distribute, or otherwise use his PHOTOGRAPH.

73.     PLAINTIFF never authorized or permitted any other person or entity – including but not limited to any personnel of the NFL or any NFL corporate entities or subsidiaries – to grant GETTY IMAGES rights, permission, or authority to access, copy, scan, publish, license, distribute, or otherwise use his PHOTOGRAPH.

*Detroit Lions & TCI*

74.    On or about September 16, 2023, the DETROIT LIONS unveiled an 8-foot-tall bronze statue of Barry Sanders (the "SANDERS STATUE") located outside of the team's stadium in Detroit, Michigan.

75.    Upon information and belief, TCI was commissioned by the DETROIT LIONS to create the SANDERS STATUE.

76.    Upon information and belief, TCI, either on its own initiative or at the request of the DETROIT LIONS, downloaded, copied, and created a large-format print of PLAINTIFF'S PHOTOGRAPH for purposes of slavishly recreating all details of PLAINTIFF'S PHOTOGRAPH in the SANDERS STATUE.

77.    On or about September 24, 2023, the DETROIT LIONS published a roughly 8-minute-long video to its official YouTube channel titled, "Sculpting Barry: The Making of Lions Legend Barry Sanders' Statue," (the "SCULPTING VIDEO") which includes footage of the sculptors working on the clay mold for the SANDERS STATUE in the TCI studio.

78.    A copy of the SCULPTING VIDEO remains available for the public to view at https://www.youtube.com/watch?v=x6Oc6-67BHI&t=348s.

79.    Upon information and belief, the SCULPTING VIDEO was produced by "One Pride Productions" – the media and documentary film division of the DETROIT LIONS – and was sponsored by Bud Light.

80.    Throughout the SCULPTING VIDEO, a blown-up copy of PLAINTIFF'S PHOTOGRAPH can be seen hanging directly behind the clay mold of the SANDERS STATUE in the TCI studio.

81.     At or about the 3:53 minute mark of the SCULPTING VIDEO, one of the sculptors acknowledges that they purposefully intended to slavishly "recreate" PLAINTIFF'S PHOTOGRAPH, stating:  "We have a photo that's considered the most iconic running photo ever taken of Barry Sanders [and] that's what's being re-created in this sculpture."  The blown-up, printed copy of PLAINTIFF'S PHOTOGRAPH can be seen in the background of the video at this time, and a black-and-white digital "still" copy of the image is displayed, in isolation, shortly thereafter.

82.     A true and correct copy of screen captures from the SCULPTING VIDEO that demonstrate the unauthorized copying, printing, and use of a copy of PLAINTIFF'S PHOTOGRAPH are attached hereto at EXHIBIT 2.

83.     PLAINTIFF never authorized, licensed, or otherwise granted permission to the DETROIT LIONS or TCI to create a derivative work slavishly based on his PHOTOGRAPH.

84.     PLAINTIFF never authorized, licensed, or otherwise granted permission to TCI to create a large-format print of the PHOTOGRAPH to be hung in the TCI studio for purposes of using it as a model to slavishly "re-create[]" it in a derivative work.

85.     PLAINTIFF never authorized, licensed, or otherwise granted permission to DETROIT LIONS to create, publish, and distribute a video prominently displaying his PHOTOGRAPH or to engage any entity to create a derivative work of his PHOTOGRAPH.

86.     In or about October 2023, counsel for PLAINTIFF contacted counsel for the NFL regarding the unauthorized use of PLAINTIFF'S PHOTOGRAPH and was told that the NFL did not provide the PHOTOGRAPH to the DETROIT LIONS or TCI for purposes of creating the SANDERS STATUE.

87.     Shortly thereafter, counsel for the DETROIT LIONS contacted PLAINTIFF'S counsel and represented that the NFL was not involved with the creation of the SANDERS STATUE.

88.     Upon information and belief, the DETROIT LIONS earn money based on views of the videos that they publish to their YouTube channel, including the SCULPTING VIDEO.

### *Retail Defendants*

89.     Upon information and belief, the DETROIT LIONS, either directly or through/in concert with NFL PROPERTIES, contracted with HIGHLAND MINT to create a framed 13" x 16" memorabilia product called "Statue Unveiling Silver Coin Photo Mint" (the "PHOTO MINT PRODUCT") to commemorate the unveiling of the SANDERS STATUE.

90.     Upon information and belief, the PHOTO MINT PRODUCT is identified as being "officially licensed" by the NFL, which grants licenses to use the trademarks of its member clubs, including DETROIT LIONS, through NFL PROPERTIES.

91.     The PHOTO MINT PRODUCT features two unauthorized copies of PLAINTIFF'S PHOTOGRAPH—one that is unaltered, and a second that has been edited/colorized and placed atop a digital plinth, to appear as if it is the statue itself.

92.     Upon information and belief, TCI created the altered version of the PHOTOGRAPH to be used in the PHOTO MINT PRODUCT as the print itself states it was created by TCI.

93.     Upon information and belief, DSG displayed and offered the PHOTO MINT PRODUCT for sale on its website at https://www.dickssportinggoods.com/p/highland-mint-detroit-lions-barry-sanders-statue-unveiling-silver-coin-photo-mint-23hmiunfllnssndrsdet/23hmiunfllnssndrsdet.

94.     A true and correct copy of a screen capture of the PHOTO MINT PRODUCT being offered for sale on the DSG website is attached hereto as EXHIBIT 3.

95.     Upon information and belief, FANATICS displayed and offered the PHOTO MINT PRODUCT for sale on its website at https://www.fanatics.com/nfl/detroit-lions/barry-sanders-detroit-lions-highland-mint-13-x-16-statue-unveiling-silver-coin-photo-mint/o-1383+t-69154619+p-5744770671352+z-9-2666839644.

96.     A true and correct copy of a screen capture of the PHOTO MINT PRODUCT being offered on the FANATICS website is attached hereto as EXHIBIT 4.

97.     Upon information and belief, NFL ENTERPRISES and/or NFL PROPERTIES displayed and offered the PHOTO MINT PRODUCT for sale through the NFL Shop at https://www.nflshop.com/detroit-lions/detroit-lions-barry-sanders-highland-mint-13-x-16-statue-unveiling-silver-coin-photo-mint/t-14372408+p-799966620636870+z-9-747336642?_ref=p-SRP:m-GRID:i-r4c0:po-12.

98.     A true and correct copy of a screen capture of the PHOTO MINT PRODUCT being offered on the NFL Shop website is attached hereto as EXHIBIT 5.

99.     Upon information and belief, the DETROIT LIONS, either directly or through/in concert with NFL PROPERTIES, contracted with MCFARLANE to create a 7" toy figurine (the "TOY PRODUCT") depicting Barry Sanders, in three different color styles (white jersey, blue jersey, and gold/bronze).

100.    The TOY PRODUCT is described on the MCFARLANE website as having been "modeled after [Sanders'] iconic running pose" as depicted in PLAINTIFF'S PHOTOGRAPH.

101.    MCFARLANE displayed and offered the TOY PRODUCT for sale through its website located at https://mcfarlanetoysstore.com/barry-sanders-white-jersey-detroit-lions-nfl-7in-figure-mcfarlanes-sportspicks/.

102.    A true and correct copy of a screen capture of the TOY PRODUCT being offered on the MCFARLANE website is attached hereto as EXHIBIT 6.

103.    Upon information and belief, the TOY PRODUCT was modeled in the exact same position and mold as the SANDERS STATUE and was purposefully released at or around the same time as the statue's unveiling.

104.    Upon information and belief, the TOY PRODUCT and SANDERS STATUE are both intended to be slavish recreations of PLAINTIFF'S PHOTOGRAPH.

105.    Upon information and belief, VC COLLECTIBLES printed, displayed, sold, and distributed an unauthorized "8x10 Autographed Photo Re-Print" of PLAINTIFF'S PHOTOGRAPH on and through its eBay account.  A true and correct screen capture of this product is attached hereto as EXHIBIT 7.

106.    Upon information and belief, the RETAIL DEFENDANTS sold copies of the aforementioned products to customers and earned a profit in doing so.

*General Allegations*

107.    PLAINTIFF never granted any DEFENDANTS permission, authorization, or a license to use the PHOTOGRAPH for any of the uses identified and alleged herein.

108.    Upon information and belief, the DETROIT LIONS and TCI purposefully copied PLAINTIFF'S PHOTOGRAPH as the basis for the SANDERS STATUE because it is "the most iconic running photo ever taken" of Sanders, as shown in the SCULPTING VIDEO.

109.    Upon information and belief, the DETROIT LIONS and TCI purposefully attempted to slavishly recreate every detail of PLAINTIFF'S PHOTOGRAPH, copying all protectable elements of PLAINTIFF'S original PHOTOGRAPH, all of which are owned exclusively by PLAINTIFF.

110.    Upon information and belief, the DETROIT LIONS and MCFARLANE similarly attempted to slavishly recreate protectible elements of PLAINTIFF'S PHOTOGRAPH as the basis of the TOY PRODUCT.

111.    Upon information and belief, the DETROIT LIONS, HIGHLAND MINT, and TCI used actual copies of PLAINTIFF'S PHOTOGRAPH and incorporated them into the PHOTO MINT PRODUCT that was offered for sale and sold by NFL PROPERTIES, FANATICS, and DSG.

112.    Because information regarding DEFENDANTS' copying and uses of PLAINTIFF'S PHOTOGRAPH remains in DEFENDANTS' possession, the full and complete scope of DEFENDANTS' infringing uses of PLAINTIFF'S PHOTOGRAPH has not yet been fully ascertained.

113.    Upon information and belief, DEFENDANTS each obtained a financial benefit from the infringing use of PLAINTIFF'S PHOTOGRAPH.

114.    DEFENDANTS, by their willful, knowing, and/or reckless actions, injured PLAINTIFF by engaging in the unlicensed, unauthorized, and uncompensated use of PLAINTIFF'S creative work and, as such, deprived PLAINTIFF of his control over, and rightful compensation for the use of his creative work.

## COUNT I
## DIRECT, CONTRIBUTORY and/or VICARIOUS
## COPYRIGHT INFRINGEMENT

115.    PLAINTIFF repeats and re-alleges each allegation set forth in the paragraphs above as if set forth fully herein.

116.    PLAINTIFF created and owns all copyrights in and to the PHOTOGRAPH at issue in this action, a copy of which is set forth in Exhibit 1.

117.    PLAINTIFF'S copyrights in and to the work at issue in this action have been registered with the United States Copyright Office prior to the filing of this action.

118.    DEFENDANTS infringed PLAINTIFF'S copyrights by making unauthorized copies, uses, and derivative copies of PLAINTIFF'S work as described herein.

119.    By making unauthorized copies, uses, and derivative copies of PLAINTIFF'S copyrighted work, DEFENDANTS infringed PLAINTIFF'S exclusive rights and otherwise misappropriated PLAINTIFF'S intellectual property for their own profit, causing PLAINTIFF significant injuries, damages, and losses in amounts to be determined at trial.

120.    To the extent that DEFENDANTS did not directly copy the PHOTOGRAPH themselves, they are liable for secondary infringement by causing or benefiting from the infringing conduct of others.

121.    DEFENDANTS obtained direct financial benefits from their infringements of PLAINTIFF'S PHOTOGRAPH.

122.    By failing to secure the rights and license necessary to copy, publish, distribute, and otherwise use and/or exploit PLAINTIFF'S PHOTOGRAPH, DEFENDANTS each separately and jointly acted willfully, intentionally, and/or with reckless disregard for PLAINTIFF'S copyrights.

123.    Upon information and belief, the DETROIT LIONS and TCI are responsible for designing the SANDERS STATUE, including by selecting, copying, editing, using, and authorizing the copying, reproduction, and use of PLAINTIFF'S PHOTOGRAPH without permission.

124.    By illegitimately offering, distributing, and/or sublicensing the PHOTOGRAPH for purposes of creating the SANDERS STATUE, the PHOTO MINT PRODUCT, and the TOY PRODUCT without PLAINTIFF'S permission, the DETROIT LIONS usurped and violated PLAINTIFF'S exclusive rights to copy, distribute, and prepare derivative works based upon the PHOTOGRAPH.

125.    PLAINTIFF seeks all damages recoverable under the Copyright Act, including actual damages and DEFENDANTS' profits attributable to the unauthorized uses of PLAINTIFF'S creative work described herein, and any damages suffered as a result of the lack of credit and attribution.

**WHEREFORE,** PLAINTIFF respectfully prays for judgment on his behalf and for the following relief:

1.    A trial by jury of all claims and issues so triable;

2.    A permanent injunction against DEFENDANTS prohibiting them from copying, displaying, distributing, advertising, promoting, and/or exploiting in any manner the copyrighted work identified herein, and requiring DEFENDANTS to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of PLAINTIFF'S PHOTOGRAPH and all copies of the infringing materials described in this complaint that are in the control or possession or custody of DEFENDANTS;

3.      All allowable damages under the Copyright Act, including but not limited to actual damages, including damages incurred as a result of PLAINTIFF'S loss of licensing revenue, DEFENDANTS' profits attributable to the infringement, and lack of attribution to PLAINTIFF; and

4.      For such other and further relief as the Court deems just and proper.


Dated:   January 11, 2024

                                 Respectfully submitted,

                                 /s/ Kevin McCulloch
                                 Kevin P. McCulloch
                                 Nate A. Kleinman
                                 McCulloch | Kleinman Law
                                 501 Fifth Avenue, Suite 1809
                                 New York, New York 10017
                                 T: (212) 355-6050
                                 F: (206) 219-6358