UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

ALLEN KEE,                                                    :
                                                              :
                          Plaintiff,                          :
                                                              :
               - against -                                    :
                                                              :
THE DETROIT LIONS, INC.; GETTY                                :
IMAGES (US), INC.; NFL                                        :        Case No.: 1:24-cv-223-ALC
PROPERTIES, LLC; NFL                                          :
ENTERPRISES, LLC; FANATICS                                    :
RETAIL GROUP NORTH, LLC; DICK'S                               :
SPORTING GOODS, INC.; BULLION                                 :
INTERNATIONAL, INC. d/b/a THE                                 :
HIGHLAND MINT; TIMELESS                                       :
CREATIONS, INC.; MCFARLANE                                    :
TOYS, INC.; KEVIN GORDON d/b/a VC                             :
COLLECTIBLES; and JOHN DOES 1-10,                             :
                                                              :
                          Defendants.                         :
                                                              :
-------------------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GETTY IMAGES'
MOTION TO COMPEL ARBITRATION**

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ........................................................................... 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.     The Parties .............................................................................................. 2

    B.     Plaintiff Licensed the Sanders Photo to NFL Photos and WireImage ........................... 2

    C.     Plaintiff Entered Into a Contributor Agreement with Getty Images that Covers the Sanders Photo ............................................................................................. 4

    D.     The Amended Complaint ........................................................................... 5

III.   ARGUMENT ................................................................................................. 6

    A.     This Court Must Compel Arbitration of Plaintiff's Claims Against Getty Images. ........ 6

      1.     Plaintiff Entered into A Valid Arbitration Agreement with Getty Images. ................. 8

      2.     The Contributor Agreement Requires the Arbitrator to Decide Threshold Questions of Arbitrability. ........................................................................................ 9

      3.     The Arbitration Agreement Encompasses Plaintiff's Claims against Getty Images.. 11

    B.     The Court Must Stay Plaintiff's Claims Against Getty Images Pending Arbitration. ... 15

IV.   CONCLUSION ............................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1Mage Software, Inc. v. The Reynolds & Reynolds Co.*,
    273 F. Supp. 2d 1168 (D. Colo. 2003) .................................................................................14

*Argus Media Ltd. v. Tradition Fin. Servs. Inc.*,
    No. 09 CIV. 7966 (HB), 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ...............................10

*Arkin v. DoorDash, Inc.*,
    19-CV-4357 (NGG)(RER), 2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020)...........................9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)..............................................................................................................11

*Bell v. Cendant Corp.*,
    293 F.3d 563 (2d Cir. 2002).............................................................................................8, 14

*Benzemann v. Citibank N.A*,
    No. 12 CIV. 9145 NRB, 2014 WL 2933140 (S.D.N.Y. June 27, 2014) ...............................15

*Boss Worldwide LLC v. Crabill*,
    No. 19 CV 2363 (VB), 2020 WL 1243805, (S.D.N.Y. Mar. 16, 2020) ...............................12

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995).....................................................................................................11

*Contec Corp. v. Remote Sol., Co., Ltd.*,
    398 F.3d 205 (2d Cir. 2005)..............................................................................................9, 10

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................................................7

*Dixilyn-Field Drilling, Ltd. v. Mobil Oil Corp.*,
    No. 83 CIV. 9308 (LBS), 1984 WL 137 (S.D.N.Y. Apr. 2, 1984)........................................15

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)..............................................................................................................11

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................................................................................................8

*GAC Int'l, LLC v. Roth Licensing LLC*,
    No. 15CV2375JMAAKT, 2016 WL 11507273 (E.D.N.Y. June 1, 2016).............................11

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987), *abrogated on other grounds by*
   *Gilmer v. Interstate/Johnson Lane Corp,* 500 U.S. 20 (1991)............................................8, 12

*Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*,
   518 F. App'x 20 (2d Cir. 2013) ...............................................................................................10

*Henry Schein, In., v . Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)................................................................................................................9, 11

*Inventory Generation Inc. v. Proventure Cap. Funding LLC*,
   No. 22 CIV. 10529 (PAE), 2023 WL 2609344 (S.D.N.Y. Mar. 23, 2023) .............................15

*Jacobs v. U.S. Anti-Doping Agency*,
   No. 04-CV-1163, 2004 WL 5003951 (S.D.N.Y. May 19, 2004) ...........................................10

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004)......................................................................................................7

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011) (per curiam).................................................................................................7

*Kutluca v. PQ New York Inc.*,
   266 F. Supp. 3d 691 (S.D.N.Y. 2017)........................................................................................8

*Lozada v. Progressive Leasing d/b/a Prog Leasing LLC*,
   No. 15-CV-2812 (KAM)(JO), 2016 WL 3620756 (E.D.N.Y. June 28, 2016) .......................12

*Micheli & Shel, LLC v. Grubhub*,
   588 F. Supp. 3d 483 (S.D.N.Y. 2022)........................................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).......................................................................................................................7

*Oldroyd v. Elmira Sav. Bank, FSB*,
   134 F.3d 72 (2d Cir. 1998), *abrogated on other grounds by*
   *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015)................................................................12

*Ortega v. Uber Techs. Inc.*,
   15-CV-7387 (NGG)(JO), 2017 WL 1737636 (E.D.N.Y. May 2, 2017)....................................9

*Pincaro v. Glassdoor, Inc.*,
   16 Civ. 6870 (ER), 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) ........................................10

*Raw v. Bank of New York Mellon Corp.*,
   No. CIV.A. 09-4341 DRH, 2010 WL 4236941 (E.D.N.Y. Oct. 21, 2010),
   *aff'd,* 447 F. App'x 268 (2d Cir. 2012)...................................................................................12

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
   322 F.3d 115 (2d Cir. 2003).................................................................................11

*Sheet Metal Workers' Nat'l Pension Fund v. Maximum Metal Mfrs. Inc.*,
   No. 13-cv-7741, 2015 WL 4935116 (S.D.N.Y. Aug. 18, 2015).............................................12

*Smith et al. v. Spizzirri et al.*,
   No. 22-1218, 2024 WL 2193872 (U.S. May 16, 2024) ...........................................7

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002)................................................................................8

*United Steelworkers of Amer. v. Warrior & Gulf Nav.*,
   363 U.S. 574 (1960).......................................................................................11

*Vera v. Saks & Co.*,
   335 F.3d 109 (2d Cir. 2003)..............................................................................12

*Visibility Corp. v. Schilling Robotics, LLC*,
   No. CIV.A. 10-12280-JGD, 2011 WL 5075816 (D. Mass. Oct. 25, 2011) ...........................14

**Statutes**

9 U.S.C. § 1 *et seq.*...........................................................................................1, 7, 15

Defendant Getty Images (US), Inc. ("Getty Images") respectfully submits this motion to compel arbitration and stay proceedings against it, pursuant to 9 U.S.C. § 1 *et seq.*

## I.   PRELIMINARY STATEMENT

Plaintiff Allen Kee ("Plaintiff") commenced this action for "direct, contributory, and/or vicarious" copyright infringement and declaratory judgment against Getty Images in the wrong forum, in violation of a binding and unambiguous arbitration clause.  The Court should compel arbitration of Plaintiff's claims against Getty Images and stay the litigation as to Getty Images.

The Amended Complaint ("AC") alleges that Getty Images exceeded the scope of the license Plaintiff granted in his Getty Images Contributor Agreement when it licensed one of his photos—an image of Detroit Lions running back Barry Sanders—to other entities. But Plaintiff has no recourse against Getty Images in this Court. When Plaintiff executed his Contributor Agreement with Getty Images nearly 20 years ago, he agreed to the broad arbitration provision it contained, which mandated that "[a]ny dispute arising out of or in connection with the Agreement" must be addressed in arbitration.  There is no question that the Contributor Agreement and its arbitration provision are valid and binding.  It is black-letter Second Circuit law that where, as here, such a provision incorporates the American Arbitration Association Commercial Rules – which reserve all questions of arbitrability to the arbitrator – the arbitrator and not the Court must decide the issue of arbitrability.  Moreover, even if the Court *were* to decide the question of arbitrability, Plaintiff's claims against Getty Images fall firmly within the arbitration provision. Plaintiff's acceptance of the arbitration provision is binding and determinative, and the FAA requires a stay of the claims against Getty Images pending the arbitration.  In short, the Court should compel arbitration and stay this action as to Getty Images.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiff Kee alleges that he is a freelance sports photographer who, at various times has licensed photographs of National Football League ("NFL") football games through NFL Photos, WireImage, and Getty Images. AC ¶¶ 45-46, 52, 62, 64.  He has been a contributing photographer with Getty Images since 2007. AC ¶ 64-65; Declaration of Heather Cameron ("Cameron Decl.") ¶¶ 9-10; *see also id.* Ex. E.

Defendant Getty Images is a global visual media company that supplies photography for business and consumers and maintains an asset library of more than half a billion photographs, videos, and music. *Id.* ¶ 2.

### B.     Plaintiff Licensed the Sanders Photo to NFL Photos and WireImage

On September 3, 1995, Plaintiff Kee snapped a photograph of Detroit Lions running back Sanders rushing with the ball during an NFL game (the "Sanders Photo"). AC ¶ 47. Plaintiff alleges that he submitted the Sanders Photo to NFL Photos, a National Football League-owned and created licensing agency, "for sublicensing" in September 1995. *Id.* ¶ 52.

Plaintiff further alleges that after NFL Photos ceased operations in or about 2004, NFL Photos (acting through other NFL entities, NFL Properties and/or NFL Enterprises) transferred the Sanders Photo to WireImage, a licensing agency which was a subsidiary of MediaVast, Inc ("MediaVast"). AC ¶¶ 54, 60-61. Upon information and belief – although Plaintiff avers that the Sanders Photo was added to WireImage's database without his knowledge or consent, AC ¶ 61 – he was in fact well-aware that NFL Properties LLC ("NFLP") had selected WireImage to act as the licensing agent for various NFL-related images, including the Sanders Photo.  An "Agreement and Release" entered by NFLP and Kee on July 1, 2004 (i) recites that NFLP had selected WireImage to act as a licensing agent for its own photos and certain other photos; (ii) provides that

NFLP would make certain payments to Kee; and in exchange (iii) gave Kee the option to have WireImage serve as licensing agent for *his* photographs of NFL events. *See* Cameron Decl. Ex. D at 4; *see also id.* §§ 1, 4. Upon information and belief, in conjunction with this agreement, Kee executed a form which gave him a choice either to authorize NFLP to transfer his photos to WireImage "so that WireImage may act as a licensing agent for Photographer's Photos," or to instruct the NFLP to return the photos to him. *Id.* at 4. He chose the former, authorizing the transfer to WireImage to serve as his licensing agent. *Id.* Under his agreement with NFL Photos, once Plaintiff checked the box opting into the licensing arrangement with WireImage, the onus was upon WireImage—not Plaintiff—to decide whether it wanted to act as a licensing agent for Plaintiff's photos. *Id.*[1]

Plaintiff *also* separately submitted the Sanders Photo to WireImage. As Plaintiff alleges, he licensed his photographs to WireImage between 2004-2007. AC ¶ 62. He did so pursuant to a Photographer Provider Agreement with WireImage, entered into on September 1, 2003 and amended on September 1, 2006. *See* Cameron Decl. Exs. A & B. That Agreement appoints WireImage as Kee's "sole and exclusive worldwide photography agent with respect to the sale and licensing of the Archive Images." *Id.* Ex. A § 1.2; *id.* Ex. B § 1.2.[2] In keeping with this

---

[1] When Getty Images acquired MediaVast, it inherited a blank copy of this agreement. Cameron Decl. ¶ 6. The NFL's pre-motion letter in this action, dated May 10, 2024 (Dkt. No. 55), confirms that Plaintiff executed this Agreement ("Plaintiff had executed an agreement in 2004 (governed by New York law) that explicitly authorized the NFL Parties to transfer any of Plaintiff's physical slides in their possession to a licensing agent called WireImage.").

[2] The WireImage Photographer Provider Agreement defines "Archive Images" to include images owned by Kee on the Effective Date of September 1, 2003. Cameron Decl. Ex. A § 1.2; *id.* Ex. B § 1.2. The Photographer Provider Agreement and Amendment together clarify that this included archival images of NFL games shot by Kee before that date. While the original WireImage Photographer Provider Agreement initially carved out such archival NFL images, *id.* Ex. A §§ 1.1-1.2, the Amendment – which applies *retroactively* to the original Agreement's effective date of September 1, 2003, superseding that original carve-out, "clarifies" that the archival NFL photos

arrangement, historical data Getty Images inherited from MediaVast/WireImage indicates that Plaintiff uploaded the Sanders Photo to WireImage's collection on October 14, 2004—making WireImage the sole licensing agent for the Sanders Photo.

     **C.**     **Plaintiff Entered Into a Contributor Agreement with Getty Images that Covers the Sanders Photo.**

A Getty Images affiliate acquired MediaVast, including its subsidiary, WireImage, in 2007. AC ¶ 63; Cameron Decl. ¶ 7. After—and since—this 2007 acquisition, Plaintiff Kee has been a contributing photographer for Getty Images. AC ¶ 64; Cameron Decl. ¶¶ 9-10; *id.* Ex. E. To become a contributing photographer, Plaintiff executed a Getty Contributor Agreement in September 2008. *Id.* Ex. E (collectively, the "Contributor Agreement"). This Contributor Agreement had an effective date of September 2007. *Id.* ¶ 9; *id.* Ex. E. This Contributor Agreement granted Getty Images a worldwide, exclusive right to distribute, market, sublicense, rent, use, copy, reproduce, publish, transmit, broadcast, display, communicate and make Accepted Images available to the public" for the term of the agreement, which has successively renewed by its terms to date. *Id.* Ex. E §§ 2.1, 8.1; *id.* ¶¶ 9-10.  The Agreement thus governs the relationship between Plaintiff and Defendant Getty Images regarding these "Accepted Images," which it defined as "[i]mages accepted for distribution under the Agreement or any prior contributor agreement between the Contributor and Getty Images…." *Id.* Ex. E §1.  The Contributor Agreement defines "Getty Images" to include entities that are controlled by or under common control with Getty Images—like MediaVast.  *Id.*; *id.* ¶ 7.

---

*were* in fact included in the Archive Images.  *Id.* Ex. B § 1.1 ("For clarification, the Parties acknowledge that at certain points during the Term 'images' did not include certain of Photographer's Archive Images…that were on file with…the National Football League, however prior to the Amendment Date Such Archive Images were provided by Photographer to the Company for use by the Company as set forth herein.").

Plaintiff's Contributor Agreement also contains a broad arbitration clause that states that "***any dispute arising out of or in connection with the Agreement shall be finally settled under the Commercial Rules of the American Arbitration Association "AAA"***"). *Id.* Ex. E § 9.5 (emphasis added).

> 9.5     Governing Law and Arbitration. The Agreement will be construed and enforced in accordance with the laws of the State of New York, excluding its laws relating to conflict of laws. Any dispute arising out of or in connection with the Agreement shall be finally settled under the Commercial Rules of the American Arbitration Association ("AAA") or International Chamber of Commerce ("ICC") in: Seattle, Washington, U.S.A.; New York, New York, U.S.A; London, England; Paris, France or Frankfurt, Germany. Contributor may select the applicable rules and the venue. The award rendered by the arbitration panel shall not be subject to any appeal in any court. The substantially prevailing Party will be entitled to recover its reasonable external attorneys' fees, all associated expenses, and accounting costs. If both Parties prevail on particular claims, or defenses of a claim, then each Party will be entitled to the attorney fees for those claims it successfully asserts or defends, and the awards will be offset.

*Id.*

Following Getty Images' acquisition of MediaVast and Plaintiff's execution of the Contributor Agreement, photographs from the MediaVast collection (including the Sanders Photo) were ingested into Getty Images' system. Cameron Decl. ¶¶ 8, 9. Getty Images records reflect an ingest date of July 13, 2008 for the Sanders Photo. *Id.* ¶ 8.

In sum, the Sanders Photo—which Plaintiff had both (1) signed an agreement with NFLP allowing WireImage to license; and (2) according to historical MediaVast data, uploaded to WireImage's library in October 2004—was among the "Accepted Images" subject to the Contributor Agreement following Getty Images' 2007 acquisition of WireImage.

**D.     The Amended Complaint**

Plaintiff filed his original complaint in this action on January 11, 2024. Dkt. No. 1. Plaintiff filed the operative Amended Complaint on April 12, 2024. Dkt. No. 50. Plaintiff brings this action for "direct, contributory, and/or vicarious" copyright infringement and declaratory judgment

against Getty Images and asserts claims against nine other defendants. Plaintiff claims that Getty Images "has sold licenses to and distributed copies of PLAINTIFF'S PHOTOGRAPH to numerous customers without PLAINTIFF'S knowledge, consent, permission, or authorization." AC ¶ 69. Plaintiff also seeks a declaratory judgment that he "did not authorize GETTY IMAGES to copy, publish, sell, control, or license copies any of the select photographs in PLAINTIFF'S ARCHIVAL COLLECTION that NFL PROPERTIES or NFL ENTERPRISES selectively chose to upload to WireImage." AC ¶ 142.

### III.    ARGUMENT

This Court must compel arbitration of Plaintiff's claims for copyright infringement and declaratory judgment against Getty Images and stay this action as to it. *First*, Plaintiff accepted a broad and binding arbitration agreement when he signed the Getty Images Contributor Agreement. *Second*, the Contributor Agreement incorporates the American Arbitration Association Commercial Rules, which reserve all questions of arbitrability for the arbitrator. *Third*, even if the issue of arbitrability were not reserved for the arbitrator, Plaintiff's claims would still need to be sent to arbitration since any dispute relating to the Sanders Photo is within the ambit of the Contributor Agreement and its arbitration provision.

### A.    This Court Must Compel Arbitration of Plaintiff's Claims Against Getty Images.

When Plaintiff executed the Getty Images Contributor Agreement, he entered an arbitration agreement with Getty Images. This arbitration agreement expressly incorporates the AAA Commercial Rules, which reserve the question of arbitrability for the arbitrator and require arbitration of his claims "arising out of or in connection with" the Agreement. The Court should give effect to this valid arbitration clause.

Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and if the agreement applies to the claims before it, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," *id.* §3.  This expansive mandate reflects an "emphatic federal policy in favor of arbitral dispute resolution."  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (internal citations omitted). The court must resolve questions concerning the scope of arbitrable issues in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Indeed, the Supreme Court reaffirmed just last week that the " the use of the word 'shall' [in Section 3 of the FAA] "creates an obligation impervious to judicial discretion" to refer a case subject to an arbitration agreement to arbitration.  *Smith et al. v. Spizzirri et al.*, No. 22-1218, 2024 WL 2193872, at *3 (U.S. May 16, 2024) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U. S. 26, 35 (1998)).

Thus, the FAA requires a court to compel arbitration where: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue.  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) *abrogated on other grounds by Local Union 97, Int'l Brotherhood of Electrical Workers, AFL-CIO v. Niagara Mohawk Power Corp.,* 67 F.4[th] 107 (2d Cir. 2023).  When an arbitration provision satisfies both conditions, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

### 1. Plaintiff Entered into A Valid Arbitration Agreement with Getty Images.

Plaintiff cannot—and does not— deny that he entered into a valid and binding arbitration agreement with Getty Images. The threshold question on a motion to compel arbitration is whether the parties have agreed to arbitrate.  "Because an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether parties agreed to arbitrate).  Under New York law – which governs Plaintiff's agreement with Getty Images, Cameron Decl. Ex. E § 9.5  – "a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987), *abrogated on other grounds by Gilmer v. Interstate/Johnson Lane Corp,* 500 U.S. 20 (1991). A "party will not be excused from his failure to read and understand the contents of a document . . . [A] party who accepts an agreement is conclusively presumed to know its contents and assent to them."  *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 701-02 (S.D.N.Y. 2017).

Plaintiff admits that he accepted the Getty Images Contributor Agreement.  AC ¶ 64 ("Following GETTY IMAGES' acquisition of MediaVast, PLAINTIFF entered into a contributing photographer agreement with GETTY IMAGES.").  Plaintiff's acceptance of the Contributor Agreement necessarily means that he accepted the arbitration provision it contains and Plaintiff has offered no allegations that attempt to surmount this conclusion. As such, a valid agreement to arbitrate disputes exists between the parties.

###### 2.    The Contributor Agreement Requires the Arbitrator to Decide Threshold Questions of Arbitrability.

Because a valid arbitration agreement exists, Plaintiff must be compelled to arbitrate.  Even if he claims that this dispute does not fall within the scope of the agreement, the arbitration agreement requires that the arbitrator—not the Court—resolve this question.

Ordinarily, "[i]f the court finds that the parties agreed to arbitrate, it should then consider whether the dispute falls within the scope of the arbitration agreement." *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 26 (2d Cir. 2002).  The FAA, however, "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, In., v . Archer & White Sales, Inc.,* 586 U.S. 63, 65 (2019). "[W]hen…parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (citations omitted).  Where rules reserving the question of arbitrability to the arbitrator are incorporated, the Court "possesses no power to decide the arbitrability issue" and must compel arbitration of arbitrability.  *Henry Schein,* 586 U.S. at 68; *see also Arkin v. DoorDash, Inc.*, 19-CV-4357 (NGG)(RER), 2020 WL 4937825, at *4 (E.D.N.Y. Aug. 24, 2020) (granting motion to compel arbitration and delegating all issues of arbitrability to the arbitrator); *Ortega v. Uber Techs. Inc.*, 15-CV-7387 (NGG)(JO), 2017 WL 1737636, at *2 (E.D.N.Y. May 2, 2017) (same); *Micheli & Shel, LLC v. Grubhub*, 588 F. Supp. 3d 483, 491–92 (S.D.N.Y. 2022) (same).

Here, the Contributor Agreement expressly incorporates the AAA Commercial Rules:

Any dispute arising out of or in connection with the Agreement shall be finally settled **under the Commercial Rules of the American Arbitration Association ("AAA")**…

Cameron Decl. Ex. E  § 9.5 (emphasis added). The AAA Commercial Rules, in turn, reserve questions of arbitrability to the arbitrator:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."[3]

"The Second Circuit has held that where, as here, a broad arbitration provision incorporates the AAA Arbitration Rules, the arbitrator and not the courts must decide the threshold issue of arbitrability." *Pincaro v. Glassdoor, Inc.*, 16 Civ. 6870 (ER), 2017 WL 4046317, at *7 (S.D.N.Y. Sept. 12, 2017) (citing *Contec*,398 F.3d at 208); *see also Gwathmey Siegel Kaufman & Assocs. Architects, LLC v. Rales*, 518 F. App'x 20, 21 (2d Cir. 2013) ("[B]y incorporating the American Arbitration Association ('AAA') rules the parties agreed to have the arbitrators decide arbitrability."); *Argus Media Ltd. v. Tradition Fin. Servs. Inc.*, No. 09 CIV. 7966 (HB), 2009 WL 5125113, at *3 (S.D.N.Y. Dec. 29, 2009) (provision stating that that "all claims arising under this Agreement shall be brought before a single arbitrator ... pursuant to the Commercial Arbitration Rules of the American Arbitration Association" manifested the parties' intent to "to reserve to the arbitrator all questions of arbitrability."); *Jacobs v. U.S. Anti-Doping Agency*, No. 04-CV-1163, 2004 WL 5003951, at *4 (S.D.N.Y. May 19, 2004).

Under well-established Second Circuit precedent, because the Contributor Agreement's arbitration clause expressly invoked the AAA Rules, the parties have delegated the question of arbitrability to the arbitrator. Accordingly, regardless of whether Plaintiff contests that the Contributor Agreement's arbitration provision applies to his instant claims against Getty Images,

---

[3] Commercial-Rules_Web.pdf (adr.org) (R. 7(a) (Sept. 1, 2022)).

this Court still should compel arbitration to allow the arbitrator to resolve any purported threshold issues of arbitrability. *See Henry Schein*, 586 U.S. 67-68.

### 3. The Arbitration Agreement Encompasses Plaintiff's Claims against Getty Images.

Even if this Court were to decide the arbitrability of Plaintiff's claims against Getty Images, these claims would fall firmly within the Contributor Agreement's expansive arbitration provision. An "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). "[T]he federal policy in favor of arbitration requires that 'any doubts concerning the scope of arbitrable issues' be resolved in favor of arbitration." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003); *see, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) ("Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."). Where the parties have agreed to a broad arbitration clause, courts recognize a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration,...only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Amer. v. Warrior & Gulf Nav.,* 363 U.S. 574, 584-85 (1960); *accord Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that broad arbitration clause creates "a presumption that the claims are arbitrable").

When deciding whether an arbitration clause covers a claim, courts "looks beyond the parties' labels to focus on the factual allegations in the complaint rather than the legal causes of action asserted." *GAC Int'l, LLC v. Roth Licensing LLC*, No. 15CV2375JMAAKT, 2016 WL 11507273, at *4 (E.D.N.Y. June 1, 2016) (internal citation omitted). When "the arbitration clause

11

is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Boss Worldwide LLC v. Crabill*, No. 19 CV 2363 (VB), 2020 WL 1243805, at *3 (S.D.N.Y. Mar. 16, 2020). This means that claims must be arbitrated so long as the underlying allegations "'touch matters' covered by the parties' [agreement]." *Genesco,* 815 F.2d at 846 An issue is only outside of a broad arbitration clause if the clause "is not susceptible of an interpretation that covers the asserted dispute." *Lozada v. Progressive Leasing d/b/a Prog Leasing LLC*, No. 15-CV-2812 (KAM)(JO), 2016 WL 3620756, at *3 (E.D.N.Y. June 28, 2016). To rebut that presumption of arbitrability, the party resisting arbitration must show the agreement clearly does not encompass the claims at issue. *See Vera v. Saks & Co*., 335 F.3d 109, 117 (2d Cir. 2003).

Here, the Contributor Agreement is quintessentially broad and Plaintiff's copyright claim is more than a "collateral matter" that "touches" upon the parties' agreement. When Plaintiff accepted the Contributor Agreement, he agreed to arbitrate "[a]ny dispute arising out of or in connection with the Agreement." Cameron Decl. Ex. E § 9.5. This expansive phrasing makes the arbitration provision "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015); *see also Sheet Metal Workers' Nat'l Pension Fund v. Maximum Metal Mfrs. Inc*., No. 13-cv-7741, 2015 WL 4935116, at *5 (S.D.N.Y. Aug. 18, 2015) ("The operative text here—embracing 'any and all ... disputes ... arising out of or relating to'—makes this a quintessentially broad arbitration clause" which was therefore presumptively enforceable) (alterations in original); *Raw v. Bank of New York Mellon Corp.*, No. CIV.A. 09-4341 DRH, 2010 WL 4236941, at *3 (E.D.N.Y. Oct. 21, 2010), *aff'd,* 447 F. App'x

268 (2d Cir. 2012) ("[a]ny dispute, controversy or claim arising under or in connection with this Agreement shall be settled exclusively by arbitration" was "prototypical broad clause").

Plaintiff's claims for copyright declaratory judgment concerning whether Getty Images licensed the Sanders Photo beyond the Contributor Agreement's scope is "a dispute arising out of or in connection with the Agreement" that is subject to its expansive arbitration clause. Cameron Decl. Ex. E § 9.5. The Contributor Agreement broadly governs "[i]mages accepted for distribution under the Agreement or any prior contributor agreement between the Contributor and Getty Images…" – or "Accepted Images." *Id.* § 2.1; §1 (definition of "Accepted Images"). Documentary evidence rebuts Plaintiff's self-serving and threadbare allegations that he "never submitted his PHOTOGRAPH to GETTY IMAGES for relicensing" and that "the PHOTOGRAPH was never subject to any aspect of the license stated in PLAINTIFF'S contributor agreement," AC ¶¶ 66, 69, and establishes the Sanders Photo is one of the "Accepted Images" under the Contributor Agreement, and is therefore subject to its arbitration clause. *See* § II.C.

As noted above, Plaintiff's claims against Getty Images are subject to his Contributor Agreement and must be arbitrated. Plaintiff's own allegations affirm that the Contributor Agreement—and therefore its arbitration provision—contemplate the photographs Plaintiff submitted to WireImage. *See* AC ¶ 65. And Plaintiff appears to have authorized the inclusion of the Sanders Photo in WireImage's collection through at least two means. ***First***, Plaintiff authorized NFLP—to whom Plaintiff admits he submitted the Sanders Photo for sublicensing, AC ¶ 52—to transfer his photos, including the Sanders Photo, to WireImage in an Agreement he entered in 2004 so WireImage could elect to act as a licensing agent for Photographer's Photos. Cameron Decl. Ex. D at 4; Dkt. No. 55. ***Second***, historical MediaVast data indicates that the Sanders Photo was uploaded to WireImage's system on October 14, 2004. Cameron Decl. ¶ 5; *id.* Ex. C. Either way,

13

the Sanders Photo was a part of the WireImage collection that Getty Images acquired in 2007 and among the Contributor Agreement's "Accepted Photos" to which the arbitration provision applied. This Photo was ingested into Getty Images system post-acquisition. *Id.* ¶ 8. In other words, documentary evidence establishes that the Sanders Photo was an "Accepted Image" subject to Kee's Getty Images Contributor Agreement. Thus, Plaintiff's claims against Getty Images relating to the Sanders Photo must be resolved in arbitration.

And even should (despite the overwhelming evidence) Plaintiff elect to deny that the Sanders Photo was an Accepted Image under the Contributor Agreement, this very issue of the applicability of the Agreement is itself within the Agreement's broad arbitration provision. Where the scope is ambiguous, any doubts are "resolved in favor of arbitration." *Bell*, 293 F.3d at 566. This rule applies with special force where Plaintiff's claims against Getty Images allege that the Contributor Agreement did not permit Getty Images to license the Sanders Photo, AC ¶¶ 65-72, and where one of Getty Images' defenses is that the Contributor Agreement permitted it to sublicense the photo – allegations that require analysis of the Contributor Agreement.

In that way, this case is exactly like *Visibility Corp. v. Schilling Robotics, LLC*, No. CIV.A. 10-12280-JGD, 2011 WL 5075816, at *5 (D. Mass. Oct. 25, 2011). There, "the merits of the plaintiff's infringement claim, as well as the defendants' defense," "turn[ed] solely on the construction of the parties' contract rights" under an agreement containing an arbitration clause." Because the parties' claims and defenses were tethered to the agreement, the court concluded that "the matter is appropriately referred to arbitration." *Id.*; *see also 1Mage Software, Inc. v. The Reynolds & Reynolds Co.*, 273 F. Supp. 2d 1168, 1173 (D. Colo. 2003) (where agreement containing arbitration clause governed whether defendant's use of software was lawful, copyright infringement claim was subject to arbitration).

Here too, the merits of Plaintiff's copyright infringement and declaratory judgment claims turn on the Contributor Agreement. Consequently, Plaintiff's claims against Getty Images fall squarely within the scope of the broad arbitration provision and are presumptively arbitrable.

### B.    The Court Must Stay Plaintiff's Claims Against Getty Images Pending Arbitration.

Section 3 of the FAA provides that, where a valid arbitration agreement requires parties to submit their dispute to binding arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As the Second Circuit has succinctly stated, "the FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz*, 794 F.3d at 347. Because Plaintiff must arbitrate his claims against Getty Images, the Court should partially stay this action pending completion of arbitration.

Plaintiff cannot avoid staying his claims against Getty Images by pointing to the other Defendants in this action that are not party to the arbitration provision. "If arbitration . . . could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised." *Dixilyn-Field Drilling, Ltd. v. Mobil Oil Corp.*, No. 83 CIV. 9308 (LBS), 1984 WL 137, at *1 (S.D.N.Y. Apr. 2, 1984) (quoting *Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n.2 (1st Cir. 1968); *see also Benzemann v. Citibank N.A*, No. 12 CIV. 9145 NRB, 2014 WL 2933140, at *4–5 (S.D.N.Y. June 27, 2014) (subsequent history omitted) (sending claims against Citibank to arbitration while permitting remaining claims against non-Citi defendants to proceed in court). Mr. Kee's claims against Getty Images may and should be stayed regardless of whether his claims against the other defendants proceed. *See Inventory Generation Inc. v. Proventure Cap. Funding LLC*, No. 22 CIV. 10529 (PAE), 2023 WL 2609344, at *9–10 (S.D.N.Y. Mar. 23, 2023). Regardless of the other parties, the Court must issue a stay.

## IV.   CONCLUSION

Getty Images respectfully submits that the Court should compel the arbitration of Plaintiff's claims against Getty Images, and stay his claims against Getty Images pending the outcome of that arbitration.

Dated: New York, New York
       May 20, 2024

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ James Rosenfeld*_____
James Rosenfeld
Nimra H. Azmi
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 603-6455
Email: jamesrosenfeld@dwt.com
       nimraazmi@dwt.com

*Attorneys for Defendant Getty Images (US), Inc.*