UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEE<br><br>                           Plaintiff,<br><br>-against-<br><br>THE DETROIT LIONS, INC. ET AL<br><br>                         Defendants. | 24-cv-223 (ALC)<br><br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Allan Kee brings this action against The Detroit Lions, Inc. ("Detroit Lions"); Fanatics Retail Group North, LLC ("Fanatics"); Dick's Sporting Goods, Inc. ("DSG"); Bullion International, Inc. d/b/a The Highland Mint ("Highland Mint"); Timeless Creations, Inc. ("TCI"); McFarlane Toys, Inc. ("McFarlane"); Kevin Gordon d/b/a VC Collectibles ("VC Collectibles"); and John Does 1-10 (collectively "Defendants") alleging various claims related to the use of a photograph (taken by Plaintiff) of Barry Sanders, a former football running back who played for the Detroit Lions.

As relevant to this motion, Plaintiff alleges in his First Amended Complaint various copyright claims against the Detroit Lions. ECF No. 50 ("FAC"). The Detroit Lions now move to dismiss Plaintiff's FAC for lack of personal jurisdiction and for improper venue. For the reasons outlined below, the Detroit Lions' motion to dismiss the FAC is **GRANTED**.

## BACKGROUND

### I.    Factual Background

Plaintiff Kee is a professional sports photographer who is currently a resident of Florida and Connecticut. FAC ¶¶ 1–2. The Detroit Lions are a corporate entity that owns and operates the Detroit Lions professional football team, one of 32 organizations comprising the National

1

Football League ("NFL"). *Id.* ¶ 4. The Detroit Lions also own all Detroit Lions-related trademarks. *Id.* The NFL operates the corporate entities NFL Properties, LLC and NFL Enterprises, LLC (the "NFL Entities"), which are registered to do business in New York and maintain a principal place of business in New York. *Id.* ¶¶ 6, 8. The Detroit Lions have contracts with the NFL and regularly transact business in New York; moreover, their owners and agents regularly attend meetings in New York. *Id.* ¶¶ 34–35. The Detroit Lions have licensed their trademark and intellectual property rights to the NFL Entities. *Id.* ¶ 7.

On or about September 3, 1995, Plaintiff captured a photograph of the Detroit Lions' then-running back, Barry Sanders, taken during an NFL game (the "Sanders Photograph"). *Id.* ¶ 47. Plaintiff subsequently submitted the Sanders Photograph to NFL Photos, the former photo-licensing arm of the NFL which ceased operations in or about 2004. *Id.* ¶¶ 52, 54. Following this, the whereabouts of the Sanders Photograph (in its original "slide" format) were largely unknown to Plaintiff, but Plaintiff believes it was transferred to an NFL storage facility in California. *Id.* ¶¶ 55–59. In or about 2022, Plaintiff became aware that Getty Images had acquired a copy of the Sanders Photograph and—without his consent—was offering it for sublicensing. *Id.* ¶¶ 68–70.

In September 2023, the Detroit Lions unveiled an 8-foot-tall bronze statue of Barry Sanders (the "Sanders Statue") placed outside Ford Field stadium in Detroit, Michigan. *Id.* ¶ 73. Plaintiff alleges that the Sanders Statue was purposefully created based on the Sanders Photograph, which the statue's sculptors referred to as "the most iconic running photo ever taken of Barry Sanders." *Id.* ¶ 80. The statue was created by TCI, an Illinois corporation. *Id.* ¶¶ 15, 74. On or about September 24, 2023, the Detroit Lions also published a video to its YouTube

Channel showing footage of the TCI sculptors working on the clay mold for the Sanders Statue. *Id.* ¶¶ 76–77.

In addition to Sanders Statue unveiling, the Detroit Lions also provided an unauthorized copy of the Sanders Photograph to Defendant Highland Mint to create a memorabilia product (the "Photo Mint Product") commemorating the statute. *Id.* ¶ 85. Highland Mint, a Florida Corporation, is an "official partner" of the NFL and creates "minted" memorabilia products sold and distributed around the country. *Id.* ¶¶ 21–22. Highland Mint included the Sanders Photograph and an image edited to appear as if it was the Sanders Statue. *Id.* ¶¶ 86–87. Highland Mint also sold and distributed this memorabilia product through various retailers, including DSG, Fanatics, and the NFL Shop, all of which are partners with. or directly controlled by. the NFL Entities; notably, DSG is registered to do business in New York. *Id.* ¶¶ 17–20, 93–99.

## II.      Procedural Background

On January 11, 2024, Plaintiff filed its Complaint. ECF No. 1. On April 12, 2024, Plaintiff filed its FAC. ECF No. 50. On May 10, 2024, the Detroit Lions filed a letter requesting a premotion conference ahead of their anticipated motion to dismiss for lack of personal jurisdiction and improper venue. ECF No. 53. On May 17, 2024, Plaintiff responded to the letter. ECF No. 76. On May 23, 2024, the Court denied the request for a premotion conference and set forth a briefing schedule for the Detroit Lions' motion to dismiss. On June 13, 2024, the Detroit Lions filed their motion to dismiss and accompanying memorandum, ECF Nos. 94, 95 ("Def. Br."). On June 27, 2024, Plaintiff filed his opposition. ECF No. 101 ("Pl. Opp."). On July 5, 2024, the Detroit Lions filed their reply. ECF No. 102 ("Def. Reply").

## STANDARD OF REVIEW

"[T]he plaintiff bears the burden of establishing personal jurisdiction." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (internal quotation marks and citations omitted). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks and citations omitted). "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks and citations omitted). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (internal quotation marks and citations omitted).

However, the Court "will not draw argumentative inferences in the plaintiff's favor," nor must it "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citations omitted).

## DISCUSSION

The Detroit Lions seek to dismiss Plaintiff's claim on grounds that the Detroit Lions have only attenuated contacts in New York, which prevents this Court from conferring personal jurisdiction—either general or specific—over them. Additionally, they argue that venue is improper. Plaintiff largely argues that the Detroit Lions are subject to jurisdiction on account of

4

their relationships to other co-defendants with extensive contacts in New York. The Court considers the Parties' arguments in turn.

I.     **The Court Lacks General Jurisdiction Over The Detroit Lions**

General personal jurisdiction subjects a defendant to suit on all claims. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Under the Due Process Clause, a corporation can "be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic' . . . that it is 'essentially at home' in that state." *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 571 U.S. at 139). Applying *Daimler*, a corporate defendant is "essentially at home" only where it is incorporated or where it maintains its principal place of business "[e]xcept in a truly 'exceptional' case." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38-39 (2d Cir. 2014)); *Gucci America, Inc.*, 768 F.3d at 135 (quoting *Daimler*, 571 U.S. at 139 & n.19). Under the New York Civil Practice Laws and Rules ("N.Y. C.P.L.R.") § 301, a defendant is only subject to general jurisdiction if they are "domiciled in New York, served with process in New York, or continuously and systematically does business in New York." *Giuliano v. Barch*, No. 16-CV-0859, 2017 WL 1234042, at *4 (S.D.N.Y. Mar. 31, 2017).

The FAC is clear that the Detroit Lions are neither incorporated in New York nor is New York their principal place of business. FAC ¶¶ 3–4. Rather, Plaintiff argues that the Detroit Lions' dealings with the NFL Entities—which conduct their business from New York on behalf of clubs like the Detroit Lions—evince "extensive, ongoing, and *thoroughly pervasive* contractual and business relationships with the NFL and its various subsidiaries and related corporate entities" such that the Detroit Lions are "truly 'at home'" in New York. Pl. Opp. at 5

(emphasis in original). Specifically, Plaintiff points to the connections between the Detroit Lions and the NFL Entities which, among other things, act on behalf of the Detroit Lions in New York and organize from their New York offices the games in which the Detroit Lions play. *Id.* at 5–6. Moreover, Plaintiff sustains that the Detroit Lions' representatives regularly attend meetings in New York and also that certain of the Detroit Lions' agreements are managed or handled by the NFL. *Id.* at 6.

In so doing, Plaintiff appears to argue that this is a truly exceptional case for general jurisdiction because the Detroit Lions have considerable contacts with the NFL. But even when viewing all of Plaintiff's allegations in a light most favorable to him at this stage, this does not support a conclusion—under a general personal jurisdiction analysis—that the Detroit Lions have sufficient contacts in New York such that they are "essentially at home" there. Indeed, the Detroit Lions argue against the improper use of an agency theory to impute to the Detroit Lions the NFL's separate contacts with the state. Def. Reply at 2 (citing *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018)). The Court agrees that it cannot entertain such an argument.

The fact that the Detroit Lions—who play in Michigan—carry out some of their business through New York is insufficient to establish general jurisdiction. *See, e.g., Wiwa Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (explaining that even a "substantial, continuous, and systematic course of business," including negotiations, transactions, and a New York office, did not support an exercise of general jurisdiction (internal quotation marks omitted)). *Brown.*, 814 F.3d at 629 ("[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and

6

continuous' are extraordinarily unlikely to add up to an 'exceptional case'"). Finding no exceptional case here, the Court declines to exercise general jurisdiction over the Detroit Lions.

## II. The Court Lacks Specific Jurisdiction Over The Detroit Lions

The Detroit Lions also argue that the Court cannot exercise specific jurisdiction. A New York court may exercise personal jurisdiction over an out-of-state defendant if "New York law would confer upon its courts the jurisdiction to reach the defendant" and, so finding, if "extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2003).

To establish specific personal jurisdiction over a foreign defendant under New York law, a plaintiff must show that the defendant "committed acts within the scope of New York's long-arm statute, [N.Y. C.P.L.R.] § 302." *Schultz v. Safra Nat. Bank of New York*, 377 F. App'x. 101, 102 (2d Cir. 2010). Indeed, New York law permits a court to exercise specific personal jurisdiction over a nondomiciliary if a party (1) transacts business in New York, (2) commits a tortious act (except defamation) in New York, (3) commits a tortious act (except defamation) outside of New York that causes injury within New York, or (4) owns, uses, or possesses real property in New York. *See* N.Y. C.P.L.R. § 302(a)). A cause of action against that party must "aris[e] from" the aforementioned acts. *See id.* It is axiomatic that N.Y. C.P.L.R. § 302 provides only specific jurisdiction over a nondomiciliary defendant "arising out of particular acts." *See Roe v. Arnold*, 502 F.Supp.2d 346, 350 (E.D.N.Y. 2007). Plaintiff's claims are suited for analysis under N.Y. C.P.L.R. § 302(a)(1).[1]

---

[1] The Detroit Lions also argue that the Court cannot assert jurisdiction under N.Y. C.P.L.R. § 302(a)(3). Def. Br. at 13–14. Plaintiff does not argue otherwise and the Court declines to engage with any analysis on this prong.

7

To assess jurisdiction under § 302(a)(1) a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction. *American Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024), *cert. denied*, No. 24-653, 2025 WL 247472 (Jan. 21, 2025); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); see *Deutsche Bank Securities, Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (N.Y. 2006).

"Transacting business under § 302(a)(1) means 'purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Am. Girl, LLC*, 118 F.4th at 277. (quoting *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023) (cleaned up)). "[T]he overriding criterion necessary to establish a transaction of business within the meaning of [N.Y. C.P.L.R. §] 302(a)(1)" is that "a non-domiciliary must commit an act by which it purposefully avails itself of the privilege of conducting activities within New York." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (cleaned up); *see also id.* at 371 ("[I]t is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis.").

Plaintiff reminds the Court that the N.Y. C.P.L.R. § 302(a)(1) is a "single act statute," meaning that a single purposeful transaction will be enough to invoke jurisdiction. Pl. Opp. at 4. However, a claim arising from such a transaction still requires "articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted). "[A]n articulable nexus or substantial relationship exists where at least one element arises from the New York contacts." *D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 299 (2017).

Plaintiff has put forth much evidence of the Detroit Lions' New York transactions generally, but not any evidence of their infringement in New York. To try to overcome this, he relies on the Detroit Lions' contacts with other parties, positing that the Detroit Lions are "vicariously or contributorily liable for the allegedly infringing actions of the other co-defendants—including Fanatics and DSG—who are located in New York, published or sold infringing products in New York, and do not contest jurisdiction or venue [in New York]." Pl. Opp. at 9. The Court must therefore consider whether the Detroit Lions have met any elements on alternative liability theories and, more importantly, whether the elements arise from contacts with New York.

A plaintiff alleging contributory copyright infringement must "allege that a defendant (1) had actual or constructive knowledge of the infringing activity, and (2) encouraged or assisted others' infringement, or provided machinery or goods that facilitated infringement." *Klauber Bros., Inc. v. QVC, Inc.*, No. 1:19-CV-09321, 2020 WL 7029088, at *3 (S.D.N.Y. Nov. 30, 2020)." (citing *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011), *accord A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001)). To plausibly allege vicarious infringement liability, "a plaintiff must show that the defendant [1] had the right and ability to supervise the infringing activity and . . . [2] has a direct financial interest in such activities." *Arista Records LLC*, 784 F. Supp 2d at 432. (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)) (cleaned up).

However, the thread here is far too attenuated for the Court to assert specific jurisdiction. Plaintiff alleges that the Detroit Lions gave Highland Mint (a Florida corporation) the Sanders Photograph and, in turn, Highland Mint sold and distributed the Photo Mint Product to other co-defendant retailers in New York, including DSG and Fanatics. Def. Br. at 9–10. Plaintiff argues

9

that Highland Mint in turn pays royalties (with payments made to New York) to the NFL, who in turn eventually pays a pertinent royalty share (with payments made from New York) to the Detroit Lions.

But Plaintiff has not alleged that the contributory or vicarious infringement claims against the Detroit Lions arose out of *their* contacts with New York.  Even if they had, the Court agrees with the Detroit Lions that a finding on this basis would violate Due Process Clause.  *See* Def. Br. at 18; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 340 (E.D.N.Y. 2013) ("In analyzing minimal contacts, the court examines the defendant's conduct, not that of plaintiffs or third parties, because the defendant's connection "with the forum State [cannot] result[ ] from decisions made by others...."").  On this basis, the Court also cannot exercise specific jurisdiction over the Detroit Lions.

## CONCLUSION

For the foregoing reasons, the Detroit Lions' motion to dismiss is **GRANTED** and the First Amended Complaint is **DISMISSED** as to the Detroit Lions for want of personal jurisdiction.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 94 and terminate The Detroit Lions, Inc as a Defendant in this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**March 30, 2025**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**